UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GERARDO PRADO

        Petitioner,

v.

WARDEN, CALIFORNIA CITY
IMMIGRATION PROCESSING CENTER

        Respondent.

No. 1:26-cv-04738-DJC-CSK

RELEASE ORDER

A# 024-435-990

Petitioner Gerardo Prado is a noncitizen detainee proceeding under a pro se Petition for Writ of Habeas Corpus. (Pet. (ECF No. 1).) Petitioner has shown that his removal is not foreseeable and the Government has not rebutted his showing: therefore, the Court grants the Petition and orders release.

**BACKGROUND**

Petitioner, a noncitizen originally from Cuba, is presently in the custody of Immigration and Customs Enforcement ("ICE"). (Opp'n (ECF No. 7) at 1[1]; Declaration of Deportation Officer Joshua A. Manglona dated June 25, 2026 ("Manglona Decl."), ¶¶ 5, 7). According to his children, Petitioner arrived in the United States in 1980 and is now a grandfather of five; he is also a "loving" caretaker of numerous "animals

---

[1] For clarity, the Court will rely on the pagination provided by the CM/ECF system.

1

without homes" whom he adopts, including "cats, dogs, turtles, and birds." (Pet. at 10.)  Between 1984 and 1991, Petitioner accrued some criminal convictions. (Manglona Decl.; Opp'n, Ex. 7.)  Petitioner was ordered removed by an Immigration Judge on April 13, 2010 and did not appeal, rendering his removal order final. (Opp'n, Ex. 2.)  It is unclear from the record whether he was detained and released at the time.[2]  Cuba has not accepted Petitioner for repatriation.  (Opp'n at 2; Manglona Decl. ¶ 13).  Petitioner has been detained since January 12, 2026.  (Manglona Decl. ¶ 10; Opp'n, Exs. 1 and 4.)  On June 3, 2026, Petitioner was given notice of his Third Country removal to Mexico and declined to sign.  (Manglona Decl. ¶ 10; Opp'n, Ex. 5.) The briefing on this matter is complete.  (Pet; Opp'n.)

**DISCUSSION**

Respondents argue that Petitioner is detained under 8 U.S.C. § 1231(a)(6), a "special statute [that] authorizes further detention if the Government fails to remove the alien during those 90 days."  (Opp'n at 3); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).  But the statute allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States."  *Id*. at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id*. at 699.  The presumptive ceiling for this detention is six months, after which, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*. at 701; *see also Jennings v. Rodriguez*, 583 U.S. 281, 298-99 (2018).

Since Petitioner has a final removal order and has been detained since January 12, 2026 – over six months – the presumption that detention is necessary falls away, and the burden is now on Petitioner to show "good reason to believe that there is no

---

[2] Petitioner states that his "Order of Supervision" was revoked "despite Petitioners [sic] substantial compliance with reporting requirements, supervision conditions, and community obligations."  (Pet. at 5-6).  Petitioner does not provide further information on the details and timing of this past release on the Order of Supervision, and Respondents do not discuss a past release order.

significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 533 at 701.  If he does so, the Government must respond with evidence "sufficient to rebut that showing." *Id*.[3]

Petitioner argues that "Respondents have failed to obtain travel documents necessary to effectuate Petitioners [sic] removal, and no receiving country has agreed to accept Petitioner at this time." (Pet. at 6.)  Petitioner has met his initial burden showing that removal is not reasonably foreseeable.  District courts have repeatedly found that similarly situated petitioners – Cuban nationals whom the Government is attempting to remove to Mexico against their will – have met their initial burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen.  *See, e.g., Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) (holding that Petitioner met his "initial burden" where there was no meaningful dispute that removal to Cuba is likely where the Government makes only unsubstantiated assertions that it will remove Petitioner to Mexico); *Olea Sanchez v. Bondi,* No. 1:25-cv-00253-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026) (holding that Petitioner met his initial burden where he showed no progress was made towards obtaining travel

---

[3] The Court notes a preliminary question of whether the burden-shifting scheme outlined in *Zadvydas* is the correct framework for the present case, as it is not applicable to those who were released on Order of Supervision while subject to a removal order based on the lack of foreseeability of removal. *Zadvydas,* 533 at 701; *see also Pham v. Marin*, No. 5:26-CV-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026) (collecting cases where district courts have noted that "*Zadvydas's* burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an [Order of Supervision]").  If Petitioner could show that he had been released in the past and that the Government "revoke[d] release," Respondents would "bear[] the burden of showing a significant likelihood that the [Petitioner] may be removed.  *Id.* (quotation and citation omitted).  Such revocations are unlawful under 8 C.F.R. § 241.13(i)(2) where the Government fails to show a change in circumstance justifying revocation of release.  *See, e.g., Ciuciu v. Warden*, *Cal. City Corr. Ctr.*, No. 1:26-cv-03274-DJC-JDP, 2026 WL 1261638, at *1 (E.D. Cal. May 7, 2026).  This Court has held in the context of a detained Cuban national that the Government's notice to Petitioner of their intent to remove him to Mexico pending his cooperation is not sufficient to show a change in circumstance under 8 C.F.R. § 241.13(i)(2) where Petitioner does not consent to third-country removal and there is no other evidence that removal is feasible in the reasonably foreseeable future.  *Llopiz Estrada, v. Warden.,* No. 1:26-cv-04120-DJC-SCR, 2026 WL 2192272, at *2 (E.D. Cal. July 29, 2026).  However, the Court does not have sufficient evidence to find that Petitioner has been previously detained and released on an Order of Supervision and will proceed under the *Zadvydas* burden-shifting framework relied on in Respondents' briefing.

documents to Cuba or Mexico and "provide[d] evidence" that "Mexico's acceptance [of him] may be contingent on [his] consent, which he is unwilling to provide" (quotation and citation omitted)).  Respondents contend that Petitioner has failed to meet his burden because "he has not demonstrated that the receiving country will not take him or that removal is barred by our own law."  (Opp'n at 6.)  But Petitioner does not have to show that removal is "barred by our own law": he must show only that there is good cause to believe removal is not reasonably foreseeable.  *Zadvydas,* 533 at 701.  He has done so.

In rebuttal, Respondents assert that "[i]f Petitioner were to cooperate with his removal to the Third Country of Mexico, based on Petitioner's removal order from the United States, ERO can facilitate this Petitioner's removal to Mexico, as a Third Country, and execute the removal order within three to four days of Petitioner's cooperation."  (Opp'n at 2; Manglona Decl. ¶ 15.)  Respondents also request that "the Court take judicial notice that the government Mexico has a 'standing agreement' with the United States to accept Cuban Nationals, [resulting in] over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026."  (Opp'n at 7 (citation omitted).)  However, district courts have rejected the argument that the bare existence of a standing agreement between the United States and Mexico is sufficient to rebut Respondent's initial showing that removal is not reasonably foreseeable, especially where Petitioner does not consent to removal.  *See, e.g., Rodriguez-Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (holding that "given that Petitioner refuses to be removed to Mexico and has declined to sign the Notice of Removal to Mexico . . . Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite" (citation omitted)); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-04371-DAD-JDP, 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026) (holding the Government failed to rebut Petitioner's initial burden where it argued only that removal is likely based on the "standing agreement" with Mexico, especially given that "the standing

4

agreement . . . appears to be contingent upon the non-citizens consent to be removed to Mexico").

Finally, Respondents contend that they have a separate authority to detain Petitioner because of his non-cooperation: "if Petitioner refuses to cooperate with removal to Mexico without claiming a fear of removal to Mexico, 8 U.S.C. § 1231(a)(1)(C) authorizes the continued detention of a removable alien so long as the alien fails to cooperate fully and honestly." (Opp'n at 7.)  This Court acknowledges that continued detention based on a Petitioner's refusal to reasonably cooperate could undermine the claim that there is no significant likelihood of removal; for example, if a noncitizen withholds the necessary identification, or, as the Ninth Circuit noted in *Lema v. I.N.S.*, "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government.  341 F.3d 853, 856 (9th Cir. 2003). Section § 1231(a)(1)(C) specifies that the removal period shall be extended beyond 90 days "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  But based on the evidence presently before the Court, Petitioner is not refusing good faith cooperation to obtain the documents necessary for travel: he is refusing to agree to a removal that is contingent on his consent.  The Government cannot use indefinite detention to manufacture noncitizens' consent to removal to a third country.  To adopt the Government's position on the use of detention to strong-arm third-country removal to Mexico would not only undermine the consent required for those removals but also sanction the use of detention to coerce otherwise unavailable removals.

As Respondents have presented no other arguments to rebut Petitioner's showing, the Court concludes that Petitioner's removal is not reasonably foreseeable and he is entitled to relief.

////

////

5

**CONCLUSION**

IT IS HEREBY ORDERED that:

1.  The Petition for Writ of Habeas Corpus is GRANTED as to Ground Two of the Petition.  (Pet. (ECF No. 1).) [4]

2.  Respondents must IMMEDIATELY RELEASE Gerardo Prado from their custody, under reasonable terms of supervision pursuant to 8 C.F.R. § 241.5.

3.  Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner without a change in circumstances to warrant Petitioner's re-detention.

4.  Respondents shall file a status report within five (5) days confirming Petitioner's release.

5.  The Clerk is directed to serve the California City Immigration Processing Center with a copy of this Order.

6.  The Clerk of the Court is directed to close this case and enter judgment for Petitioner.  This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:  __**August 5, 2026**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC-10-Prado-26cv-04738.merits

---

[4] In the interests of judicial economy, the Court declines to address the remaining grounds for relief Petitioner has raised.

6